# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **GARY FISHER** : | |
| : | **Civil Action No.** 1:17-cv-347 |
| **Plaintiff** : | |
| : | **Judge:** _____ |
| : | |
| : | |
| **v.** : | **COMPLAINT AND** |
| : | **JURY DEMAND** |
| **SMITH & NEPHEW, INC.,** : | |
| a Tennessee Corporation, : | |
| : | |
| **Defendants** : | |

Plaintiff, by and through counsel, and for his complaint against Smith & Nephew, Inc. ("Defendant") alleges as follows:

1. This is a strict products liability action against Defendant Smith & Nephew, inc. arising out of Defendant's violations of various sections of the Federal Code of Regulations, the laws of the State of Ohio, and the damages caused to Plaintiff Gary Fisher as a result thereof.

## PARTIES AND JURISDICTION

2. Plaintiff Gary Fisher is a resident and citizen of Cincinnati, Ohio, in Hamilton County, Ohio.

3. Plaintiff alleges an amount in controversy in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4. Defendant Smith & Nephew is, and at all times relevant to this action was, a Delaware corporation with its principal place of business located at 1450 Brooks Road, Memphis Tennessee 38116. Defendant Smith & Nephew is a resident and citizen of the state of Tennessee.

5. At all times relevant, Defendant was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce, either directly or indirectly through third parties or related entities, numerous prosthetic devices, including the Birmingham Hip Resurfacing System (hereinafter "BHR") and compatible products for use as a hip resurfacing prosthesis.

6. This court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in the district. Specifically, Plaintiff Gary Fisher received medical care and treatment in this venue.

## FACTUAL BACKGROUND

### Gary Fisher's Initial Surgery and Revision Surgery

8. On October 5, 2010, Plaintiff Gary Fisher, at the age of 56, underwent left hip arthroplasty surgery in Hamilton County, Ohio. As part of the hip surgery, Plaintiff's surgeon utilized and implanted the Defendant's Birmingham Hip Resurfacing system.

9. Specifically, the following components of the BHR system were used:

    a. Smith & Nephew BHR Acetabular Cup 52 mm; and

    b. Smith & Nephew BHR compatible Modular Head 48 mm.

10. On May 22, 2015, Plaintiff Gary Fisher underwent revision of his left hip due to left hip pain, discomfort, elevated chromium levels, and other complications caused by the failure of Defendant's Birmingham Hip Resurfacing system. Plaintiff's revision surgery was also performed in Hamilton County, Ohio.

2

11. As a direct and proximate result of Defendants' failed and defective BHR system and products, as well as Defendant's other failures as described herein, Plaintiff has suffered significant harm, conscious pain and suffering, physical injury and bodily impairment.

12. As a direct and proximate result of Defendants' failed and defective BHR system and products, as well as Defendant's other failures as described herein, Plaintiff had to undergo a premature revision surgery of his prosthetic hip, causing further permanent impairment and weakness in his ligaments, bone and muscles.

13. As a direct and proximate result of Defendants' failed and defective BHR system and products, as well as Defendant's other failures as described herein, Plaintiff had to undergo revision surgery less than five years after his original surgery. Due to the unexpected and premature failure of Defendants' BHR product, Plaintiff faces a potential of more replacement and/or revision surgeries in the future.

14. As a direct and proximate result of Defendants' failed and defective BHR system and products, as well as Defendant's other failures as described herein, Plaintiff has suffered significant mental anguish and emotional distress and will continue to suffer physical limitations, pain, injury, damages, harm, and mental and emotional distress in the future.

15. As a direct and proximate result of Defendants' failed and defective BHR system and products, as well as Defendant's other failures as described herein, Plaintiff has also incurred medical expenses and other economic harm, and will continue to incur such expenses and other economic harm in the future.

16. Plaintiff's injuries as described herein qualify as a permanent and substantial physical deformity, loss of use of a limb, and/or loss of use of a bodily organ system.

17. At the time of the resurfacing procedure in October 2010, neither Plaintiff nor his surgeon were aware of the problems and complications associated with the BHR system and products, as described below.

### Problems with Smith & Nephew's BHR System and Products

18. Defendant, Smith & Nephew, Inc., is a developer and manufacturer of joint replacement systems. Since 2006, Defendant, Smith & Nephew, Inc., has manufactured, introduced and/or delivered the Birmingham Hip Resurfacing System (hereinafter "BHR") into the stream of interstate commerce. The BHR is a metal-on-metal hip resurfacing prosthesis. It is comprised of the following two (2) components:

    a. Birmingham Resurfacing Femoral Head; and

    b. Birmingham Hip Resurfacing Acetabular Cup.

19. Before commercially distributing the BHR in the United States, federal law required Defendant, Smith & Nephew to submit an application for premarket approval ("PMA") of the device to the Secretary of Health and Human Services. On May 9, 2006, the Food and Drug Administration ("FDA") completed its review of Defendant, Smith & Nephew's PMA application for the BHR. Based on the materials submitted by Defendant, Smith & Nephew, the FDA conditionally approved the BHR for commercial distribution.

20. The Approval Order from the FDA stated that "[c]ommercial distribution of a device that is not in compliance with these conditions is a violation of the [Food, Drug and Cosmetic] act, [21 U.S.C. §§301, et seq.]."

21. The Approval Order required Smith & Nephew to, among other things:

4

a. Submit a PMA supplement "when unanticipated adverse effects, increases in the incidence of anticipated adverse effects, or device failures necessitate a labeling, manufacturing or device modification";

b. Submit an "'Adverse Reaction Report' or 'Device Defect Report' within 10 days after [Smith & Nephew] receives or has knowledge of information concerning…Any adverse reaction, side effect, injury, toxicity, or sensitivity reaction that is attributable to the device and…has been addressed by the device's labeling but is occurring with unexpected severity or frequency";

c. "[R]eport to the FDA whenever they receive or otherwise become aware of information, from any source, that reasonably suggests that a device marketed by the manufacturer or importer:

1. May have caused or contributed to a death or serious injury; or

2. Has malfunctioned and such device or similar device marketed by the manufacturer…would be likely to cause or contribute to a death or serious injury if the malfunction were to recur."

22. Additionally, the Approval Order cited many agreements Smith & Nephew made with the FDA, which became part of the approval. Thus, the Approval Order became an outline of the specific post-market obligations and duties Smith & Nephew undertook, in addition to all those existing under Federal Law, when it finally convinced the FDA to conditionally approve the BHR. Those agreements included, but were not limited to, the following:

a. Smith & Nephew would conduct a post-approval study and submit its reports biannually the first two years and annually for the next eight years following

5

premarket approval, which study was to evaluate the "longer-term safety and effectiveness" of the BHR;

  b. Smith & Nephew would implement a training program of its physicians, which was to include quarterly investigator teleconferences or meeting the first two years "to discuss study issues including adverse events; and to identify recommendations for improvement of the training program or labeling";

  c. Smith & Nephew would "provide an analysis of adverse events and complaints (including MDRs) received regarding the BHR system";

  d. Smith & Nephew would advise of the results of its post-approval studies, training program assessment, and adverse event analysis through a supplement in its labeling upon completion of the post-approval study, or at "earlier time points, as needed."

23. The Approval Order made clear that each requirement imposed upon Smith & Nephew with respect to its distribution of the BHR system was to "ensure the safe and effective use of the device."

24. After Smith & Nephew received approval of the BHR system on May 9, 2006, but prior to Plaintiff's first resurfacing surgery, Smith & Nephew became aware of defects in the BHR and harm it was causing, as well as deficiencies in surgeon training, but did not respond in accordance with its obligations, including but not limited to, the following:

  a. Smith & Nephew received hundreds of adverse reports and complaints regarding the BHR but delayed its reporting to the FDA, and when it did communicate adverse reports, it did not do so properly but, in fact, attempted to blame others for the adverse events;

6

      b.      Smith & Nephew only initiated follow up inquiry on a fraction of adverse event reports by the patients' surgeons and sales force regarding the BHR;

      c.      Smith & Nephew became aware of wide evidence that the BHR systems were wearing down more quickly and severely than anticipated, and failed to take appropriate action to determine the cause and provide a solution, nor did it appropriately advise the FDA;

      d.      Smith & Nephew, when it did provide reports to the FDA pursuant to the Approval Order, underreported to and withheld information from the FDA about the likelihood of failure;

      e.      Smith & Nephew also failed to timely supplement its labeling as required in the Approval Order with information pertaining to the various failures of the BHR system, thereby misrepresenting the efficacy and safety of the BHR resurfacing products and actively misleading the FDA, the medical community, patients, and public at large into believing that the BHR system was safe and effective.

25.    Smith & Nephew's failures to follow the requirements of the Approval Order constitute violations of the Federal Food, Drug, and Cosmetic Act, pursuant to 21 CFR 801.109 and furthermore voids any legal protection that Defendant enjoys from tort claims as part of the device's PMA status.

## Additional Federal Requirements

26.    Pursuant to federal law, a medical device is deemed to be adulterated if, among other things, it fails to meet established performance standards, or if the methods, facilities or controls used for its manufacture, packing, storage or installation are not in conformity with federal requirements.  *See* 21 U.S.C. § 351.

27. Pursuant to federal law, a device is deemed to be misbranded if, among other things, its labeling is false or misleading in any particular, or if it is dangerous to health when used in the manner prescribed, recommended or suggested in the labeling thereof. *See* 21 U.S.C. § 352.

28. Pursuant to federal law, manufacturers are required to comply with FDA regulation of medical devices, including FDA requirements for records and reports, in order to prohibit introduction of medical devices that are adulterated or misbranded, and to assure the safety and effectiveness of medical devices. In particular, manufacturers must keep records and make reports if any medical device may have caused or contributed to death or serious injury, or if the device has malfunctioned in a manner likely to cause or contribute to death or serious injury. Federal law also mandates that the FDA establish regulations requiring a manufacturer of a medical device to report promptly to FDA any correction or removal of a device undertaken to reduce a risk to health posed by the device, or to remedy a violation of federal law by which a device may present a risk to health. *See* 21 U.S.C. § 360i.

29. Pursuant to federal law, the Secretary of Health and Human Services may prescribe regulations requiring that the methods used in, and the facilities and controls used for, the manufacture, pre-production design validation (including a process to assess the performance of a device but not including an evaluation of the safety or effectiveness of a device), packaging, storage, and installation of a device conform to current good manufacturing practice ("CGMP"), as prescribed in such regulations, to assure that the device will be safe and effective and otherwise in compliance with federal law. *See* 21 U.S.C. § 360j(f).

30. The regulations requiring conformance to good manufacturing practices are set forth in 21 CFR § 820 *et seq*. As explained in the Federal Register, because the CGMP

regulations must apply to a variety of medical devices, the regulations do not prescribe the details for how a manufacturer must produce a device. Rather, the quality system regulations provide a framework of basic requirements for each manufacturer to use in establishing a quality system appropriate to the devices designed and manufactured, and the manufacturing processes employed. Manufacturers must adopt current and effective methods and procedures for each device they design and manufacture to comply with and implement the basic requirements set forth in the quality system regulations.

31. Pursuant to 21 CFR § 820.1(c), the failure to comply with any applicable provision in Part 820 renders a device adulterated under section 501(h) of the Federal Food Drug & Cosmetic Act ("the Act") (21 U.S.C. § 351).

32. The regulations under 21 CFR Part 820 include, but are not limited to, requiring Defendants to:

    a. establish and maintain a quality system that is appropriate for the specific medical device designed or manufactured. 21 CFR § 820.5;

    b. establish and maintain procedures to control the design of the device in order to ensure that specified design requirements are met. 21 CFR § 820.30(a);

    c. establish and maintain procedures for defining and documenting design output in terms that allow an adequate evaluation of conformance to design input requirements. 21 CFR § 820.30(d);

    d. establish and maintain procedures for verifying the device design to confirm that the device design output meets the design input requirements. 21 CFR § 820.30(f);

  e.  establish and maintain procedures for the identification, documentation, validation or where appropriate verification, review and approval of design changes before their implementation. 21 CFR § 820.30(i); and

  f.  develop, conduct, control, and monitor production process to ensure that a device conforms to its specifications. 21 CFR § 820.70(a).

  33.  Upon information and belief, Defendants' BHR system and products at issue in this case are adulterated pursuant to 21 U.S.C. § 351 because, among other things, Defendants failed to comply with the numerous regulations under 21 CFR § 820 regarding product design and manufacturing.

  34.  Upon information and belief, Defendants' BHR system and products at issue in this case are adulterated pursuant to 21 U.S.C. § 351 because, among other things, they failed to meet established performance standards, and/or the methods, facilities, or controls used for their manufacture, packing, storage or installation are not in conformity with federal requirements. *See* 21 U.S.C. § 351.

  35.  As a result of Defendants' failure to establish and maintain CGMP, Defendants' BHR system and products at issue in this case were defective and failed, resulting in injury to Plaintiff.

  36.  Upon information and belief, Defendants' BHR system and products are misbranded because, among other things, they are dangerous to health when used in the manner prescribed, recommended or suggested in the labeling thereof. *See* 21 U.S.C. § 352.

## FIRST CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY: DEFECTIVE MANUFACTURING
### ORC § 2307.74 et seq.

37. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

38. Defendant is the manufacturer, designer, distributor, seller, and/or supplier of the BHR system and compatible products for use in arthroplastic procedures of the hip.

39. The BHR system and products manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendant, were defective in their manufacture and construction when they left the hands of Defendant in that they deviated in a material way from the design specifications, formula, or performance standards of the manufacturer and/or applicable federal requirements for these prosthetic devices, posing a serious risk of injury and death.

40. The BHR system and products were defective in manufacturing and deviated in a material way from the design specifications and/or performance standards such that the products caused injury to Plaintiff.

41. As a direct and proximate result of Plaintiff's use of the BHR system and products, as manufactured, designed, sold, supplied and introduced into the stream of commerce by Defendant, and Defendant's failure to comply with the federal requirements, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

42. Defendant's actions and omissions as alleged in this complaint constitute a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.

11

## SECOND CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY: DESIGN DEFECT
### ORC § 2307.75 et seq.

43. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

44. Defendant is the manufacturer, designer, distributor, seller, and/or supplier of the BHR system and compatible products for use in arthroplastic procedures of the hip.

45. The BHR system and products manufactured and supplied by Defendant, were defective in design or formulation in that, when they left the hands of the Defendants, the foreseeable risks of the products exceeded the benefits associated with their design or formulation, and/or they failed to comply with federal requirements for these medical devices.

46. The BHR system and products were defective in design such that the risks of failure of the devices exceeded the benefits of the devices.

47. The BHR system and products were defective in design such that the failure of the devices was more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

48. Defendant's BHR system and products' high failure rate and increased risk of poisoning patients with high levels of chromium rendered the devices defective in design.

49. Defendant knew or should have known that such design would have resulted in a failure of the BHR system and products, and Defendants failed to adequately test the results of such design.

50. The BHR system and products were defective in that at the time the products left the control of Defendant, a practical and technically feasible alternative design was available that

would have prevented the harm for which Plaintiff Gary Fisher seeks to recover without substantially impairing the usefulness or intended purpose of the products.

51. As a direct and proximate result of Plaintiff Gary Fisher's use of the BHR system and products, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, as well as Defendant's failure to comply with the federal requirements, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

52. Defendant's actions and omissions as alleged in this complaint demonstrate a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.

### THIRD CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY
### DEFECT DUE TO INADEQUATE WARNING
### ORC § 2307.76 et seq.

53. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

54. Defendant is the manufacturer, designer, distributor, seller, and/or supplier of prosthetic devices including the BHR system and compatible products for use in arthroplastic procedures of the hip.

55. The BHR system and products manufactured, designed, sold, distributed, supplied and/or placed in the stream of commerce by Defendant were defective due to inadequate warning or instruction because at the time they left the control of Defendant, Defendant knew or should have known that its product was unreasonably dangerous due to its failure rate and due to the increased risk of poisoning patients with high levels of chromium.

13

56. Despite the fact that Defendant knew or should have known that its BHR system and products were unreasonably dangerous due to their high failure rate and risk of causing high levels of chromium, Defendant failed to exercise reasonable care to adequately warn consumers that its products had an increased risk of injury and increased risk of a required revision surgery.

57. As a direct and proximate result of Plaintiff Gary Fisher's use of the BHR system and products, as manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

58. Defendant's actions and omissions in this complaint demonstrate a flagrant disregard for human life and safety, malice, and aggravate and egregious fraud, so as to warrant the imposition of punitive damages.

**FOURTH CAUSE OF ACTION**

**STRICT PRODUCTS LIABILITY:
DEFECT DUE TO NONCONFORMANCE WITH REPRESENTATIONS
ORC § 2307.77 et seq.**

59. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

60. Defendant is the manufacturer, designer, distributor, seller, and/or supplier of the BHR system and products for use in arthroplastic procedures of the hip.

61. The BHR system and products manufactured and supplied by Defendant were defective in that, when they left the hands of Defendant, they did not conform to representations made by Defendant concerning the products and/or with applicable federal requirements.

62. Plaintiff and/or his physicians, at the time they selected the BHR system and compatible products to be used in Plaintiff's surgery, justifiably relied upon Defendant's

representations that the BHR system and products were safe for use in hip replacement and/or resurfacing surgeries and would conform to the representations regarding the character and quality of said products to be used in his surgeries.

63. As a direct and proximate result of Plaintiff's use of the BHR system and products, as well as Plaintiff's and his physicians' reliance on Defendant's representations regarding the character and quality of the BHR system and products, Plaintiff suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

64. Defendant's actions and omissions as alleged in this complaint demonstrate a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.

## FIFTH CAUSE OF ACTION

### FRAUDULENT/NEGLIGENT MISREPRESENTATION

65. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows.

66. Defendant, as the manufacturer of prosthetic hip devices being used by physicians and patients in orthopedic surgery, has a general duty not to deceive or misrepresent the safety, quality, characteristics, etc., of the devices it designs, manufactures, distributes, sells, and supplies.

67. In the exercise of reasonable care, Defendant should have known that its BHR system and products failed to comply with federal requirements for safe design and manufacture and/or were in other ways out of specification or deviated from performance standards, yet Defendants, in breach of their general duty not to deceive, negligently misrepresented to Plaintiff

15

and/or Plaintiff's physicians that its BHR system and products were safe and met all applicable design and manufacturing requirements.

68. Defendant negligently and/or fraudulently concealed from Plaintiff and Plaintiff's physicians that its BHR system and products lacked the proper safety, quality, and characteristics to function appropriately without placing patients at risk of injury and/or high rates of revision surgery.

69. Defendant's representations about the safety, quality, and characteristics of its BHR system and products were made with utter disregard and recklessness as to the truth of such representations.

70. Plaintiff and Plaintiff's physicians reasonably relied to their detriment upon Defendant's misrepresentations that the BHR system and products were safe for use and would perform to their intended purposes and standards.

71. As a direct and proximate result of Defendant's breach of its duty and negligent misrepresentations about its products, Plaintiff used Defendant's BHR system and products.

72. As a direct and proximate result of the failure of Defendant's BHR system and products, Plaintiff has suffered serious physical injury, harm, damages and economic loss and will continue to suffer such harm, damages and economic loss in the future.

73. Defendant's actions and omissions as alleged in this complaint demonstrate a flagrant disregard for human life and safety, malice, and aggravated and egregious fraud, so as to warrant the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for relief as follows:

1. Compensatory and punitive damages in excess of the jurisdictional amount, including, but not limited to non-economic damages in excess of $350,000.00 and punitive damages in excess of twice the compensatory damages award;

2. Economic damages in the form of medical expenses, out of pocket expenses, and other economic damages in an amount to be determined at trial of this action;

3. Attorneys' fees, expenses, and costs of the action; and

4. Such further relief as the Court deems necessary, just, and proper.

Respectfully submitted,

*/s/ Calvin S. Tregre, Jr.*
Calvin S. Tregre, Jr. (0073454)
BURG SIMPSON ELDREDGE HERSH & JARDINE, PC
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
Phone:  (513) 852-5600
Fax:  (513) 852-5611
Email:  ctregre@burgsimpson.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

*/s/ Calvin S. Tregre, Jr.*
Calvin S. Tregre, Jr.

17